Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEILAND STEVENS, Individually and On Behalf of All Others Similarly Situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | **JURY TRIAL DEMANDED** |
| QUIKSILVER, INC., ANDREW P. MOONEY, and RICHARD SHIELDS, | |
| Defendants. | |

Plaintiff Leiland Stevens ("Plaintiff"), individually and on behalf of all other persons similarly situated, by the undersigned attorneys, for the complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and

- 1 -

announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Quiksilver Inc. ("Quiksilver" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired Quiksilver securities between June 6, 2014 and March 26, 2015, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Quiksilver designs, develops, and distributes branded apparel, footwear, accessories, and related products primarily for men, women, and children. Its products are for various activities, including casual and outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX and motocross, and rally car.

- 2 -

3.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked adequate internal controls over financial reporting; and (2) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

4.     On March 4, 2015, the Company announced that it would delay its first quarter earnings report due to its audit committee's investigation of a "revenue cut-off issue."

5.     On this news, shares of Quiksilver fell $0.09 per share or approximately 5% from its previous closing price to close at $1.90 per share on March 4, 2015.

6.     On March 26, 2015, the Company filed an amended Form 10-K for the fiscal year ended October 31, 2014 (the "Amended 2014 10-K"), which revealed that its internal control over financial reporting was not effective as of October 31, 2014.

7.     On this news, shares of Quiksilver fell $0.35 per share or over 15% from its previous closing price to close at $1.90 per share on March 27, 2015.

8.     On March 27, 2015, the Company announced the abrupt removal of Defendant Mooney, effective March 27, 2015 and sudden resignation of Defendant Shields, effective April 3, 2015.

- 3 -

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act

12.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the accompanying Certification, purchased Quiksilver securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant Quiksilver is a Delaware corporation with its principal offices located at 15202 Graham Street, Huntington Beach, California. It is one of the world's leading outdoor sports lifestyle companies. The Company's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ZQK".

16. Defendant Andrew P. Mooney ("Mooney") has served as the Company's Chairman and Chief Executive Officer until his removal, effective March 27, 2015.

17. Defendant Richard Shields ("Shields") has served as the Company's Chief Financial Officer until his resignation, effective April 3, 2015.

18. The defendants referenced above in ¶¶16-17 are sometimes referred to herein as the "Individual Defendants."

19. Defendant Quiksilver and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20. Quiksilver is an outdoor sports lifestyle company, which designs, produces and distributes a diversified mix of branded apparel, footwear, accessories, snowboards and related products.

### Materially False and Misleading Statements Issued During the Period

21. On June 6, 2014, the first day of the Class Period, the Company filed a Form 10-Q for the quarterly period ended April 30, 2014 (the "2nd Q 2014 10-Q")

Class Action Complaint for Violation of the Federal Securities Laws

with the SEC, which provided the Company's quarterly financial results position and stated that the Company's internal control over financial reporting was effective as of April 30, 2014. The 2nd Q 2014 10-Q was signed by Defendant Shields. The 2nd Q 2014 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendant Mooney and Shields, which stated that the financial information contained in the 2nd Q 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

22.     On September 8, 2014, the Company filed a Form 10-Q for the quarterly period ended July 31, 2014 (the "3rd Q 2014 10-Q") with the SEC, which provided the Company's quarterly financial results position and stated that the Company's internal control over financial reporting was effective as of July 31, 2014. The 3rd Q 2014 10-Q was signed by Defendant Shields. The 3rd Q 2014 10-Q contained signed SOX certifications by Defendant Mooney and Shields, which stated that the financial information contained in the 3rd Q 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     On December 23, 2014, the Company filed a Form 10-K for the fiscal year ended October 31, 2014 (the "2014 10-K") with the SEC, which provided the Company's year end financial results and position and stated that the Company's internal control over financial reporting was effective as of October 31, 2014. The 2014 10-K was signed by Defendants Mooney and Shields. The 2014 10-K contained

Class Action Complaint for Violation of the Federal Securities Laws

signed SOX certifications by Defendant Mooney and Shields, which stated that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     The statements referenced in ¶¶ 21-23 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and compliance policies, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company lacked adequate internal controls over financial reporting; and (2) as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Emerges

25.     On March 4, 2015, the Company issued a press release announcing the delay in the release of its financial results for the first quarter of 2015 due to management's identification of a revenue cut-off issue. The press release states in part:

> ***Quiksilver, Inc. (ZQK) today announced that it has postponed the distribution of its 2015 first quarter earnings release, as well as the related conference call and webcast previously scheduled to take place on March 5th, as a result of a revenue cut-off issue identified by management and brought to the attention of the Audit Committee.***

Class Action Complaint for Violation of the Federal Securities Laws

The Audit Committee promptly commenced an investigation last week and has not yet reached any conclusions. Based on currently available information, the Company believes that the completion of the Audit Committee's investigation will have no material impact on its previously issued financial statements, its 2015 first quarter financial results, or its current guidance.

The Audit Committee plans to review progress regarding its investigation at a previously scheduled regular meeting of the Board of Directors on March 16th, after which the Company anticipates announcing a date for distribution of its first quarter 2015 financial results during March.

(Emphasis added).

26.     On this news, shares of Quiksilver fell $0.09 per share or approximately 5% from its previous closing price to close at $1.90 per share on March 4, 2015.

27.     On March 26, 2015, the Company filed an amended Form 10-K for the fiscal year ended October 31, 2014 (the "Amended 2014 10-K") with the SEC. The Amended 2014 10-K  revealed that its internal control over financial reporting was not effective as of October 31, 2014—contrary to what was previously reported in the 2014 10-K. The Amended 2014 10-K states in part:

**Item 9A. Controls and Procedures**

(a)     Evaluation of Disclosure Controls and Procedures
We maintain disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act that are designed to ensure that information required to be disclosed in our reports filed under the Exchange Act, is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial

- 8 -

Officer, as appropriate, to allow timely decisions regarding required disclosure. In designing and evaluating the disclosure controls and procedures, management recognized that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving the desired control objectives, and management necessarily was required to apply its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide a reasonable level of assurance of reaching our desired disclosure control objectives.

We carried out an evaluation under the supervision and with the participation of management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures as of October 31, 2014, the end of the period covered by this report. ***Previously, based on that evaluation, our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures were effective as of October 31, 2014. However, due to the material weakness in internal control over financial reporting described below, our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure procedures were not effective, and were not operating at the reasonable assurance level as of October 31, 2014.***

(b)    Management's Annual Report on Internal Control Over Financial Reporting (Revised)

Internal control over financial reporting refers to the process designed by, or under the supervision of, our Chief Executive Officer and Chief Financial Officer, and effected by our Board of Directors, management and other personnel, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles, and includes those policies and procedures that:

- •    pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of our assets;

Class Action Complaint for Violation of the Federal Securities Laws

- •     provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that our receipts and expenditures are being made only in accordance with authorizations of our management and directors; and

- •     provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on the consolidated financial statements.

Internal control over financial reporting cannot provide absolute assurance of achieving financial reporting objectives because of its inherent limitations. Internal control over financial reporting is a process that involves human diligence and compliance and is subject to lapses in judgment and breakdowns resulting from human failures. Internal control over financial reporting also can be circumvented by collusion or improper management override. Because of such limitations, there is a risk that material misstatements may not be prevented or detected on a timely basis by internal control over financial reporting. However, these inherent limitations are known features of the financial reporting process. Therefore, it is possible to design into the process safeguards to reduce, though not eliminate, this risk. Management is responsible for establishing and maintaining adequate internal control over our financial reporting.

Management has used the framework set forth in the report entitled "Internal Control—Integrated Framework" published by the Committee of Sponsoring Organizations ("COSO") of the Treadway Commission (1992 Framework) to evaluate the effectiveness of its internal control over financial reporting.

***Management had previously reported that its internal control over financial reporting was effective as of October 31, 2014; however, in February 2015, management identified and brought to the attention of the Audit Committee a revenue cut-off issue.*** The Audit Committee promptly commenced an investigation, with the assistance of independent legal counsel and outside forensic accountants, engaged by the Audit Committee (the "Independent Investigation"), into the scope

Class Action Complaint for Violation of the Federal Securities Laws

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and causes of this revenue cut-off issue and reported the results of the Independent Investigation to the full Board of Directors and management.

**Based on the results of the Independent Investigation and our reassessment of the deficiencies in the operating effectiveness of certain of our internal controls, we have determined that a material weakness existed in our internal control over financial reporting as of October 31, 2014.** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of a company's annual or interim consolidated financial statements will not be prevented or detected on a timely basis. **Management has identified deficiencies in operating effectiveness that, in combination, represent a material weakness in internal control over financial reporting as follows:**

> **In our North America wholesale operations, accurate information regarding actual shipment routing and customer delivery was not consistently maintained in our ERP system in accordance with our procedures. As a result, certain net revenues recorded in the prior period did not meet the criteria for revenue recognition at that time but instead should have been recognized in the following quarter. In addition, certain of our employees took actions inconsistent with our Code of Business Conduct and Ethics. These deficiencies in combination represented a material weakness in our internal control over financial reporting.**

**Because of the material weakness identified, management has concluded that its internal control over financial reporting was not effective as of October 31, 2014.**

We analyzed the impact of the revenue cut-off misstatements from the identified material weakness and concluded that it did not have a material impact on our previously issued consolidated financial statements. Notwithstanding the material weakness in our internal control over financial reporting, we have concluded that the consolidated

Class Action Complaint for Violation of the Federal Securities Laws

financial statements and other financial information included in the Original Filing, fairly present in all material respects our financial condition, results of operations and cash flows as of, and for, the periods presented.

The foregoing has been approved by our management, including our Chief Executive Officer and Chief Financial Officer, who have been involved with the reassessment and analysis of our internal control over financial reporting.

Deloitte & Touche LLP has issued an attestation report (see below) on our internal control over financial reporting.

(Emphasis added).

28.    On this news, shares of Quiksilver fell $0.35 per share or over 15% from its previous closing price to close at $1.90 per share on March 27, 2015.

29.    On March 27, 2015, the Company announced the abrupt removal of Defendant Mooney, effective March 27, 2015 and sudden resignation of Defendant Shields, effective April 3, 2015..

30.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Quiksilver securities during the Class Period (the

Class Action Complaint for Violation of the Federal Securities Laws

"Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Quiksilver securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Quiksilver or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and

Class Action Complaint for Violation of the Federal Securities Laws

securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the

- Class Period misrepresented material facts about the business, operations and management of Quiksilver;

- whether the Individual Defendants caused Quiksilver to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Quiksilver securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

Class Action Complaint for Violation of the Federal Securities Laws

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Quiksilver securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants

omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

40.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and

Class Action Complaint for Violation of the Federal Securities Laws

maintain the market price of Quiksilver securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Quiksilver securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Quiksilver securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Quiksilver's finances and business prospects.

44.     By virtue of their positions at Quiksilver, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each

Class Action Complaint for Violation of the Federal Securities Laws

defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45.    Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Quiksilver securities from their personal portfolios.

46.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Quiksilver, the Individual Defendants had knowledge of the details of Quiksilver's internal affairs.

47.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Quiksilver. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Quiksilver's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price for Quiksilver's securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Quiksilver's business and

Class Action Complaint for Violation of the Federal Securities Laws

financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Quiksilver securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged upon the revelation of the alleged corrective disclosures.

48.   During the Class Period, Quiksilver's securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Quiksilver securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Quiksilver securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Quiksilver's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of
### The Exchange Act Against The Individual Defendants

51.    Plaintiff repeats and realleges each and every allegation contained m the foregoing paragraphs as if fully set forth herein.

52.    During the Class Period, the Individual Defendants participated in the operation and management of Quiksilver, and conducted and participated, directly and indirectly, in the conduct of Quiksilver's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Quiksilver's business practices.

53.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect

to Quiksilver's financial condition and results of operations, and to correct promptly any public statements issued by Quiksilver which had become materially false or misleading.

54.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Quiksilver disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Quiksilver to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Quiksilver within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Quiksilver securities.

55.   Each of the Individual Defendants, therefore, acted as a controlling person of Quiksilver. By reason of their senior management positions and/or being directors of Quiksilver, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Quiksilver to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Quiksilver and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

Class Action Complaint for Violation of the Federal Securities Laws

56.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Quiksilver.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 2, 2015                        Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 /s/ Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone:   (213) 785-2610
Facsimile:    (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Quiksilver Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Quiksilver Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| **First name:** | Leiland |
| **Middle initial:** | |
| **Last name:** | Stevens |
| **Address:** | Redacted |
| **City:** | |
| **State:** | |
| **Zip:** | |
| **Country:** | |
| **Facsimile:** | |
| **Phone:** | |
| **Email:** | |

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 7/16/2014 | 500 | 3.32 |
| Common Stock | 8/11/2014 | 1000 | 3.22 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          **YES**

**Certification for Leiland Stevens (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.          **YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 03/09/2015